UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSH THOMAS, | ) | CASE NO. 1:04-cv-05793-MJS (PC) |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | ) ) | (ECF No. 32) |
| D. A. CARRASCO, et al., | ) ) | |
| Defendants. | ) ) | |
| | / | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (ECF Nos. 4 & 54.) Before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b) and 12(b)(6). (ECF No. 32.) Plaintiff has opposed the motion. (ECF No. 40.)

**I.     PROCEDURAL HISTORY**

**A.     Thomas I**

The conduct at issue in the instant suit allegedly occurred during the course of earlier litigation between Plaintiff and some of the same Defendants named here, <u>Thomas v. Stephens</u>, 1:00-cv-05817 LJO SMS PC (<u>Thomas I</u>). In <u>Thomas I</u>, Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at the California Substance Abuse Treatment Facility at Corcoran (CSATF), claimed that various personnel at the prison were deliberately indifferent to his serious medical needs.

Plaintiff's claims in that case were tried to a jury who returned a verdict for the defendants. Judgment on the verdict was affirmed on appeal.

While litigating Thomas I, Plaintiff was granted the right to review and copy portions of his medical records. In doing so he discovered that Deputy Attorney General David Carrasco and his legal assistant, Veronica Mendoza, had requested his medical records. Specifically, Plaintiff discovered

> Two (2) pages documents (one 'a civil rights document request form fax on March 12, 2002, from Veronica Mendoza Legal Assistant Correctional Law Section Office of the Attorney General') (Two a document request form dated May 14, 2002, from CSATF Litigation Coordinator stated as follows: 'the following is a request from the Attorney General Office for the Medical Records of Inmate Thomas C-53074. Please note that the document are needed before March 26, 2002.' D.A. Carrasco and V. Mendoza knowingly willingly and deliberately the confidentiality of medical information act and violated plaintiff's rights under both state and federal law and the United States Constitutions.

(Thomas II, Compl., ¶ IV.)

2. Thomas II

Plaintiff then initiated the instant action on June 3, 2004, against Defendants Carrasco and Mendoza alleging that Defendants had "knowingly, willingly, and deliberately conducted an impermissible discovery of plaintiff's medical records without serving plaintiff a request for production or an order from the court".

On November 22, 2005, Findings and Recommendations were entered recommending that the current action be dismissed for failure to state a claim upon which relief could be granted.[1] The magistrate judge found that Plaintiff should have filed a motion in the action in which the claims arose, i.e. Thomas I, instead of initiating a new suit. (ECF No. 8.) On February 17, 2006, that recommendation was adopted in full, without comment. (ECF No. 10.) Judgment was entered in favor of Defendants and the case was closed. (ECF No. 11.)

---

[1] Because the complaint failed to state a claim on its face, the recommendation was entered sua sponte prior to any service of or appearance by Defendants. 28 U.S.C. § 1915A(a).

On July 21, 2008, the Ninth Circuit Court of Appeals reversed. (ECF No. 20.) In a two page memorandum opinion, the court held that it was error to conclude that Plaintiff improperly brought a separate action pursuant to 42 U.S.C. § 1983, and it remanded the case with instructions to order a response from Defendants. See Thomas v. Carrasco, et al., 285 F. App'x 487 (9th Cir. 2008).

On April 29, 2009, Plaintiff filed his First Amended Complaint in this action.[2] (ECF No. 24.) In accordance with the Ninth Circuit's ruling, the Court ordered that the First Amended Complaint be served on Defendants. (ECF No. 26.) On September 1, 2009, Defendants Carrasco, Cooper, Clark, Adams, and Mendoza filed the instant Motion to Dismiss. (ECF No. 32.) Defendants Ndoh, Enriquez, Grannis, and Peterson later joined in the Motion to Dismiss.[3] (ECF Nos. 34 & 52.)

## II. FACTS RE THOMAS II

Plaintiff's First Amended Complaint does not add new claims; it restates the central allegation of the original complaint in greater detail and with more specificity regarding the acts of the individual Defendants. In his statement of claim, Plaintiff asserts:

> Defendants knowingly, willingly, and deliberately conducted an unpremissible [sic] discovery of plaintiff private medical records - information before the court issued an order opening discovery, and again 2 years after discovery cut-off date. Defendants further improperly intruded, obtained, copied and released a complete unredacted copies of plaintiff's private medical records-information without court order, subpoena, notice, or an authorization from plaintiff. Defendants maintaining an unlawful policies authorizing improper release of plaintiff's and inmate medical records and central files.

---

[2] In the first amended complaint, Plaintiff names as Defendants the following individuals in addition to Carrasco and Mendoza: Ben Ndoh, Correctional Counselor and Litigation Coordinator at CSATF; Peggy Dunifer, Health Care Nurse at CSATF; C.L. Cooper; Jennifer Null, Legal Affairs Unit Assistant at CSATF; E. Sanchez, Chief Deputy Warden at CSATF; K. Clark, Deputy Warden at CSATF; P. Enriquez, Facility Captain; N. Grannis, Chief of Inmate Appeals; Barry Alves, Deputy Attorney General; Vince Adams, Litigation Coordinator at CSATF; Carolyn Peterson, Health Care Records Custodian at CSATF.

[3] The USM 285 form for service of process upon Defendant Dunifer was returned as unexecuted on August 24, 2009. The form for Defendant Null was returned as unexecuted on October 7, 2009. The form for Defendant Alves was returned as unexecuted on February 8, 2010. The form for Defendant Angiol was returned as unexecuted on February 22, 2010. The form for Defendant Sanchez has not been returned.

(Am. Compl., ¶ IV.)  Plaintiff seeks exemplary and punitive damages and injunctive and other equitable relief.

**III.   ANALYSIS**

Plaintiff alleges that Defendants violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as Article I Section I of the California Constitution.  Defendants move to dismiss all of Plaintiff's claims.  Each will be addressed in turn below.

**A.   Due Process Claims**

Plaintiff asserts that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when Defendants accessed his medical records outside of the discovery period.[4]

1. Fifth Amendment

"[T]he Fifth Amendment's due process clause applies only to the federal government." Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).  Because none of the named Defendants are federal actors, Plaintiff has failed to state a claim for violation of the Fifth Amendment.  Defendants' Motion to Dismiss is granted as to Plaintiff's Fifth Amendment claims.

2. Fourteenth Amendment

To state a claim for a violation of the Due Process Clause of the Fourteenth Amendment, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). "The Due Process Clause takes effect only if there is a deprivation of a protected interest." Id. at 874.

---

[4] The discussion of Plaintiff's federal due process claims resolve both the federal and state constitutional due process claims.  Los Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (citing Payne v. Superior Court, 132 Cal. Rptr. 405, 410 n.3 (1976) (the California Constitution provides the same basic guarantee as the Fourteenth Amendment of the United States Constitution)).  Accordingly, the Court will analyze Plaintiff's claims only under the federal standards.

-4-

Defendants move to dismiss Plaintiff's due process claims on the grounds that he has failed to assert a life, liberty, or property interest that would entitle him to due process protections. Defendants argue that Plaintiff waived any right to privacy of his medical records when he filed an action that placed his medical condition at issue. Plaintiff responds that he did not waive his privacy rights and that the filing of this action is evidence of his continued assertion of those rights.

In Whalen v. Roe, 429 U.S. 589 (1977), the Supreme Court recognized that individuals have a privacy interest in "avoiding disclosure of personal matters, and . . . in making certain kinds of important decisions." Id. at 599-600. However, the Court did not define the contours of that privacy right and ultimately held that any right of privacy in medical information was not infringed by a New York law requiring that physicians disclose identifying information for any patient to whom they prescribed certain controlled substances. Id. at 605.

The Ninth Circuit recently clarified that Whalen did not establish a constitutional right to privacy in medical records.[5] See Seaton v. Mayberg, 610 F.3d 530, 537 (9th Cir. 2010) ("Some of our sister circuits recognize a constitutional right to privacy in medical records, though the Supreme Court has never so held."). The court questioned the existence of such a right, holding that the California civil commitment procedure for sexually violent predators fell outside of "[w]hatever constitutional right to privacy of medical information may exist." Id. at 536 (emphasis added).

Prior to Seaton, the Ninth Circuit had recognized a limited right to privacy of medical records in certain contexts. See Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d

---

[5] There is substantial disagreement amongst the circuits as to whether there is a constitutional right to privacy in medical records. Compare Lankford v. City of Hobart, 27 F.3d 477, 479 (10th Cir.1994) (recognizing a right to privacy regarding medical records); Doe v. City of N.Y., 15 F.3d 264, 267 (2d Cir.1994) (same); Pesce v. J. Sterling Morton High Sch., 830 F.2d 789, 795-98 (7th Cir.1987) (same), and United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577-80 (3d Cir.1980) (same) with Am. Fed'n of Gov't Employees v. HUD, 118 F.3d 786, 791-93 (D.C. Cir.1997) (questioning existence of constitutional right to confidentiality in general); Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir.1994) (denying existence of right to confidentiality regarding medical records); and Borucki v. Ryan, 827 F.2d 836, 840-49 (1st Cir.1987) (declining to decide whether a constitutional right to privacy regarding medical records exists).

1260, 1269 (9th Cir. 1998) (privacy right recognized in Whalen "clearly encompasses medical information and its confidentiality."); Planned Parenthood of Southern Arizona v. Lawall, 307 F.3d 783, 789-90 (9th Cir. 2002) ("[T]he right to informational privacy applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public."). The Ninth Circuit did not explicitly overrule those cases in Seaton and, as such, they remain binding law. Thus, the Court finds that there is a limited right to privacy in medical records that could implicate due process protections.

However, privacy rights can be waived. See, e.g., Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997) (holding that plaintiff waived his right to privacy by entering into settlement agreement that he knew would become a matter of public record); Powell v. Schriver, (175 F.3d 107, 112 (2d Cir. 1999) ("[T]he right to maintain confidentiality of one's transsexualism may be subject to waiver."). The Ninth Circuit has yet to address this issue, but multiple district courts have held that the right to privacy of medical records is waived when the plaintiff's medical condition is "at issue" in a grievance or lawsuit. See, e.g., Doe v. Marsh, 918 F. Supp. 580, 585 (N.D.N.Y. 1996) ("A plaintiff may waive the privilege when his medical condition is at issue in a lawsuit."); Ferrell v. Glen-Gery Brick, 678 F. Supp. 111, 112 (E.D. Pa. 1987) ("both courts and commentators alike have consistently taken the view that when a party places his or her physical or mental condition in issue, the privacy right is waived"); Ammons v. Gerlinger, 2007 WL 5659413, *2 (W.D. Wis. March 12, 2007) (same); Gowins v. Greiner, 2002 WL 1770772, *9 (S.D.N.Y. July 31, 2002) (same).

As one court has stated: "If non-prisoners are deemed to waive their right to privacy in medical records and/or in the doctor-patient relationship upon the filing of civil suits due to the necessities attendant upon such suits, certainly prisoners can be deemed to similarly waive their necessarily more limited right to privacy upon the filing of grievances due to the necessities attendant upon such grievances." Caldwell v. Beard, No. 2:07-cv-727, 2008 WL 2887810, *7 (W.D. Pa. July 23, 2008). The Court agrees with that rationale and holds that, to the extent an individual has a right to privacy in his medical records, such right is

waived by the filing of a lawsuit that puts the individual's medical condition at issue.

In Thomas I,[6] Plaintiff claimed that the defendants intentionally interfered with the medical care he received from prison authorities.  He also claimed that defendants physically injured him by ordering him to do work that contrary to doctor's orders. Plaintiff's medical records were highly relevant to such claims and therefore discoverable. Fed. R. Civ. P. 26(b).  By prosecuting Thomas I, Plaintiff voluntarily put his medical condition at issue and, accordingly, waived any right to privacy in his medical records.

The only liberty interest asserted by Plaintiff in his First Amended Complaint is his right to privacy in his medical records.  Because Plaintiff waived that privacy right by prosecuting Thomas I, he has failed to assert an infringement of any life, liberty, or property interest by Defendants accessing those records during the course of litigation. Plaintiff has therefore failed to state a claim for violation of the Due Process clause; such claim must be dismissed.  Nunez, 147 F.3d at 874.

### B.    Fourth Amendment

Plaintiff also asserts that his Fourth Amendment rights were violated by Defendants accessing his medical records.

"The threshold inquiry in any Fourth Amendment analysis is whether the government's conduct is included in the Amendment's coverage, in other words, whether it amounts to a 'search' for constitutional purposes." United States v. Gonzalez, 328 F.3d 543, 547 (9th Cir. 2003).  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33 (2001).

As a general rule, a person only has a Fourth Amendment expectation of privacy in documents that he owns or possesses. See, e.g., United States v. Miller, 425 U.S. 435, 440-442 (1976) (rejecting Fourth Amendment challenge to bank disclosure of depositor

---

[6] The court may take judicial notice of court records in another case. Fed.R.Evid. 201; see United States v. Wilson, 631 F.2d 118, 119 (9th Cir.1980) (stating that a court may take judicial notice of court records in another case).

information). The medical records at issue here were maintained by the State and possessed by the State. Plaintiff did not, therefore, have a reasonable expectation of privacy in those records, and Defendants accessing those records did not constitute a search for Fourth Amendment purposes. See Webb v. Goldstein, 117 F. Supp. 2d 289, 296 (E.D.N.Y. 2000) (rejecting Fourth Amendment claim under similar circumstances). See also S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 743 (1984) (customer could not bring a Fourth Amendment challenge to government's procurement of his bank records on the grounds that they were obtained pursuant to "defective subpoenas" or "that he was given no notice of the subpoenas"); Young v. Murphy, 90 F.3d 1225, 1236 (7th Cir. 1996) (patient had no standing to raise Fourth Amendment challenge to investigators' examination of nursing home records).

Accordingly, Plaintiff has failed to state a claim for violation of his Fourth Amendment rights. That claim must be dismissed.

**IV.    Un-served Defendants**

Defendants Angiol, Dunifer, Null and Sanchez have not been served. The claims against these Defendants duplicate those against the other Defendants. Specifically, Plaintiff alleges that the unserved Defendants participated in the unauthorized accessing of his medical records and thereby violated his constitutional rights. Because Plaintiff has failed to state a claim based on the unauthorized access of his medical records, the Court dismisses the claims against the unserved Defendants sua sponte. 28 U.S.C. § 1915A(b)(1),(2).

**V.    Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief could be granted. The Clerk shall close the case. This dismissal

///

///

shall count as a strike for purposes of 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:   October 12, 2010              /s/ *Michael J. Seng*
                                       UNITED STATES MAGISTRATE JUDGE